and Joseph LaPorte. James Kaplan is here for the appellates, McElhone and LaPorte. Timothy and Brooke Wagner is here for the Securities and Exchange Commission. And Mr. Kaplan, you may begin your argument when you're ready. May I please report, Jim Kaplan, on behalf of the appellants. I'll be presenting arguments for both appellants today, although Mr. LaPorte's counsel, David Ferguson, is here at counsel table as is my co-counsel, Noah Snyder. We are here to address three principal issues. The first, whether appellants were denied due process when the court entered an expansion order in December 2020, which seized essentially all their assets and placed them into receivership. The second, whether the court abused its discretion when it awarded $143 million in disgorgement. Well, we have a question about whether or not we have jurisdiction over the expansion order. Yes, Your Honor. The final judgment for the receivership entities and the corporate defendants has not been entered yet. Why isn't it better to wait for a final order on the receivership proceedings? And then you can appeal the final distribution plan. The expansion order, as the receiver points out, merged into the final judgment against the appellants. We agree. Beyond that, it's reviewable as a collateral order because it is final. It doesn't go to the merits. And if you wait any longer, the money will be gone because the receiver will distribute it. Aren't there other entities that are laying claim to the assets? Any entity laying claim to the assets is subject to the claims procedure in the district court. But the receiver cannot distribute until the final, final order, correct? No, Your Honor. The receiver has filed a motion with the district court seeking to distribute. There have been objections laid. There is a process. But sometime this summer, there will likely be an order. But wouldn't an appeal lie from that order? I think the appeal properly lies now. I think you have jurisdiction order merged into the final judgment against my clients. We were, I'm sure you're aware, here previously and denied jurisdiction at that time. There is no fact that matters that is going to change. Well, the whole point of the expansion isn't it to just safeguard the assets and make sure the assets don't go missing to maintain the status quo. That's what an expansion order does, to maintain the status quo. It was completely unnecessary. Let me explain. First, at the time the expansion order was entered, there was an asset freeze in place. Second, the vast majority, in terms of dollar value, the vast majority of the assets in the expansion order was real estate. There is such thing as a list pendants. It's a far less drastic remedy, and it was never seriously considered by the lower court. Finally, please be aware that the assets that are subject to the expansion order, had they been left to my client's name, while they could not have been moved, they could have surely been used to satisfy the judgment in this case that's now earning interest at the tune of a million dollars a month. My client's assets have been tied up for years. They were evicted from their home. They have no ability to pay their attorney's fees. They have no ability to satisfy the judgment. The sole purpose of the expansion was to safeguard the assets to make them available for disgorgement. Well, how about it? Why are we still paying interest at a million dollars a month? And what justification is there for continuing to let that clock run? You said you were denied due process. You didn't get notice and an opportunity to be heard in a fair proceeding, but doesn't the record reflect that you had the entire SEC investigative file? The SEC investigative file does not consist, and did not at that time consist, of the documents that were needed to contest what we've been calling the sharp report. This report was filed on Sunday, December 13th, before December 15th status conference. It essentially hijacked the entire conference. The receiver was allowed to speak uninterrupted for nearly a half hour about how the report really shows that my client's operation was a Ponzi scheme. The district court was completely persuaded by it. Acknowledged as much as calling it a Ponzi scheme. One day later issued the order. I'm sorry to interrupt you, but that hearing followed a full round of briefing, correct? A full round of briefing where we had no ability to rebut the substance of the charges because our books and records were withheld from us. Have you disputed though, or did your clients dispute that the PAR funds had been commingled? Oh my goodness. Yes. When we finally got the books and records, an extensive audit was commissioned. The auditor examined millions of transactions over a course of eight years or so and demonstrated that there was no Ponzi scheme. I'm not talking about a Ponzi scheme. I'm talking about commingling of assets. The mere fact that a bank account has assets that were taken in from promissory notes and assets that were generated from operations does not justify an expansion order, especially where we had no real opportunity to contest the Sharpe report and the court denied us an evidentiary hearing. The court denied us an oral argument. Yes, I'm aware of the cases that make very clear that summary proceedings are often justified, but not when there's already an asset freeze in place and not when a list pendant could provide all the security anyone could ever want. It was a status hearing that your clients had notice of. A status hearing. Yes. Right? Yes. And they were not permitted to speak or contest and at one point were put on mute. There was no, you didn't have an opportunity to respond at the status hearing? Correct. The transcript is available. It's in the record and we take things for granted sometimes now because we're all here together, but December of 2020 was the height of the pandemic and they were not. When we look at the final, the final disgorgement award, and I mean, just looking at the record, the court arrived at what, three million dollars less than the SEC asked for. It seems like the SEC did not get everything it wanted here, but your clients did pretty well when it comes to the court making its financial calculations. It was kind of hard on several instances. It was kind of hard on the SEC, but they didn't get everything they asked for. Well, let me speak to that point directly. When you look at the disgorgement hearing and you look at the court's comments, the court at the time was very direct with the commission. The court said, and I'll quote, it would almost be impossible for me to write an order that will withstand appellate review if I didn't make the SEC go back and write the motion over, but that's not what he did. The SEC came in with a net raise analysis, conveniently contending that after years, it was impossible for them to even address what the so-called ill-gotten gains were, and instead diverted and said 550 million was raised, 300 million dollars was returned, couple of deductions, not much is warranted. We want 237 million dollars. If we go back to the expansion motion, if we go back to the shock report, two and a half years earlier, the receiver was able to trace funds and specifically stated that 99.3 million had been moved to Laforte and McElhone. The SEC, in its disgorgement motion, said that McElhone and Laforte together had something over 100 million dollars, and yet they asked for 237. The district court should never have excused the SEC's blatant failure to carry its burden of proof. Now, I'm not asking you to treat the SEC like any other civil appellant who didn't carry its burden of proof. I'm not asking you to excuse disgorgement. I'm asking you to remand the case so that a proper disgorgement hearing, hopefully before a different judge, but a proper disgorgement hearing could be held. Two minutes. I'm sorry? Two minutes. And the starting place there is the 99.3 million. I do want to talk about penalties. Laforte issued penalties jointly and severally, which we think is flat out impermissible. I'm not the only one who thinks that. Second Circuit thinks that. Doesn't our SEC versus Monterosso say it's a well-settled principle that joining several liability is appropriate in securities law cases where two or more individuals or entities have close relationships and engaging in illegal conduct? No. It applies only to disgorgement, not to penalties. We do not contest disgorgement as properly joint and several. Penalties are not, and the SEC has grudgingly conceded that now in their brief. They say, not a problem, just scratch out the joint and several part. I don't think it's quite that simple. I think it is. And most importantly, it foregoes the examination of the facts before the court, which had numerous specific bad acts specified against Laforte and none against McElhone, whose liability principally existed as a control person. Now, my client said consent judgments. They accepted the facts of the complaint. It's a black box. The SEC can't now go outside and introduce no different facts. What possible justification could there be for equal penalties to Laforte and McElhone when Laforte is accused of a litany of bad acts and McElhone is accused of none? It defies reason. It defies logic. And it underscores what has infected its proceeding from the very beginning, namely the lower court's apparent willingness to take shortcuts as a means to an end. However noble it would be to seek to make the investment whole, disgorgement is not. All right, Mr. Kaplan, you've reserved some time for rebuttal. Thank you. I did. Thank you. This is Mr. Kalaya. Let's see now. Let me ask you, Mr. Kalaya, are you splitting your time with the SEC? That's right, your honor. I'll be speaking for the first five minutes. My arguments will be focused on the expansion order and Brooke Wagner from the SEC will be speaking for the remaining 10 minutes. Thank you. Your honors, may it please the court. My name is Timothy Kalaya from the law of Stumphauser, Kalaya, Nadler, and Sloman and I represent Ryan Stumphauser, who's the court appointed receiver in the case below. The first argument that I think the court needs to consider is a waiver argument. Appellants waive their right to appeal the order expanding the receivership. In December 2020, the district court entered the expansion order. About a year later, the appellants consented to the entry of judgments against them. In doing so, they waived their right to appeal those judgments in all interlocutory orders leading up to the entry of those judgments. In our position, that decision was fatal to their ability to appeal today. Under 11th Circuit precedent, waivers of appeals are clearly enforceable and there's no question here that there was a waiver. Appellants signed consents that state the following. Defendant waives the right, if any, to a jury trial and to appeal from the entry of the judgment. Those are the consents at the record at 1002 and 1004. In Shores v. Sklar, this court said- Let me see if I understand now. Where in the record would I look to see that they waived their right to appeal the expansion order? Where is that? The record citations of the consents are 1002 and 1004. Those are the docket entries. Those are the consents that were actually signed by the appellants. Right. Forgive me if perhaps I'm not understanding in Judge Wilson's notes, but where specifically are you seeing language that provides that waiver? Sure. In the consent, it states the following. Defendant waives the right, if any, to a jury trial and to appeal from the entry of the judgment. Although it didn't explicitly state the receivership expansion order, we think the opposite has to hold true. They did not carve out the right to appeal any of the interlocutory orders that preceded that. Let me just clarify. The expansion order had already been entered when these consent judgments were signed by the individuals. That's right. By almost a year. So just like in anything, whether it's a plea agreement, if you want to preserve the right to appeal something, you include it in the language. That's exactly right. This court has stated on many occasions, and there are cases involving, for example, orders on class certification. You can settle your individual claim, and so long as you reserve the right to appeal the class certification issue, you can do that. But here, it's completely different. They did not reserve anything. They entered into those consent judgments. Let's assume they didn't wait. And so what do you have to say about jurisdiction? Sure. I think the SEC and the receiver may see this differently. We believe that these are interlocutory orders that merge into the consent judgment, and then, of course, the consent judgment merges into the final judgment. So therefore, we think it is appealable on this basis currently. Now, with respect to the due process arguments, the district court properly exercised its broad discretion in granting the motion to expand the receivership. Appellants suggest that they should have been granted broad discovery and an evidentiary hearing before the court rules. But that argument ignores the fact that these orders are typically entered very often at the very inception of a case, when there's ongoing fraudulent conduct and the risk of dissipation of assets. And these filings are typically done right with the filing of the complaint on an ex parte basis. So, of course, when it's done ex parte, a defendant does not have the ability to conduct discovery or participate in an evidentiary hearing or an oral argument before the order is entered. So are you saying that there is not a due process right at all in these types of orders? You know, I'm not sure that's a settled area of law, because there is case law that says, for example, that the appointment of a receiver is temporarily putting somebody in control of the asset. It's not a deprivation of property. It's not a taking. And the fact that these are often done very early in the case, I think, suggests that there is no due process consideration for the initial appointment. So long as the court is satisfied that there's a risk of dissipation of assets, the court can take immediate relief and immediate action. And that doesn't mean that the appellants were not without relief. They said they didn't have discovery that they needed. They eventually obtained that discovery. What they could have done is file a motion to modify, dissolve, or wind down the receivership. They never did that. And in fact, 28 U.S.C. 1292 says if the court denied a motion to wind down or dissolve the receivership, not only could they have pursued their relief in the district court, they could have filed an immediate appeal to this court, and they never availed themselves of those rights. What about the argument that a list effective at preserving the assets? So the court did find co-mingling of funds or potential co-mingling of funds and dissipation of assets. There were a number of factors that went to the court's ruling. One was the defendant's conduct. And specifically in the order expanding the receivership, is that over? Is that okay? If you'd like me to answer that question? You can answer the question. Sure. So the court cited specifically in its order, the defendant's own overall conduct to date as one of the reasons supporting its entry of the order. There had been a data breach. There's also evidence in the record that there was a sale of property that was done. It was receivership property, and that was done without the authority and permission of the receiver. So on this basis, your honors, we would ask that the court affirm the receivership order. Thank you, Mr. Kalaya. We'll hear from Ms. Wagner on behalf of the Securities and Exchange Commission. Good morning. May it please the court. Brooke Wagner for the Securities and Exchange Commission. On appeal, defendants provide no basis to overturn the district court's considered rulings throughout this case. First, the court should not consider defendants' challenge to the order expanding the receivership as part of its review of the final judgment. The expansion order and the receivership proceedings are fundamentally separate from the case that culminated in the final judgment here. Defendants effectively concede as much by seeking a review of the expansion order not as a part of the final judgment, but as an independent collateral order. But the time for collateral order review is long past. The expansion order was entered years ago, and nothing about the final judgment alters that rule. Moreover, the expansion order doesn't need to stringent test for collateral order review because, among other things, it is reviewable at a later point. The appropriate time for review is when there is a final order in the receivership proceedings. What about the argument that interest is accruing and it will ultimately make it more difficult for defendants to pay their obligations? Sure. I mean, I think, first of all, there's no reason to think that that's necessarily the case. That's, in fact, ultimately it's determined that there are assets in the receivership that should be credited for the judgment that the parties would be able to work out a way to address the prejudgment interest issue as well for assets over which they truly had no control. I'm not sure I'd be satisfied with that answer if I were the defendant trusting the SEC to work it out afterwards. But I think that speaks to the way receivership proceedings work, that these things are fluid and there's still a lot of things to be worked out at the claims handling process. And I think prejudgment interest could be part of that, the things to be worked out. I also think generally our point is that, you know, the collection side of things is fundamentally separate from the merit case that culminated in the final judgment here. And so as a general matter, whether or not parties can satisfy the judgment is not something that goes to the underlying merits of the judgment. I wouldn't say that that issue produced the judgment. So as I was saying here, you know, there will be another final order in a receivership proceeding. And that order, unlike the final judgment, will conclusively determine the issues raised by the expansion order and will do so for all interested parties. Do you think the court should dismiss the appeal? Can you talk to us about the joint and several liability issue? Yes. So we do agree that under the circumstances presented in this case, it would not be appropriate to impose joint and several liability for the civil penalties, which the district court's opinion indicated. I just want you to correct me. There was one order that was entered that had the language and then the amended one did not have the language. I think it's slightly different. So the district court's opinion includes the sentence after. So it goes through the analysis of the factors as to the defendants and then states that it wants to impose 21.85 million for each defendant. And then it says that shall be imposed jointly and separately. But the judgment itself does not include that joint and several language for the penalty. It does so expressly for the discouragement. But no one can test the discouragement. You're just correct. I'm just saying penalty. Exactly. So but so the penalty language in the judgment, the judgment imposes, I believe, it's 21.85 million for each defendant for a total of 43.7 million. This is limited to the civil penalties, right? Correct. Only the civil penalties can't be assessed jointly and severally. Discouragement, right? Correct. So in any event, we have to vacate and remand with respect to the civil penalties. Well, our position is that you don't have to vacate and remand because the face of the judgment does not impose the penalties jointly and separately. And the parties agree that it would not be appropriate to do so in this particular case so that the court could simply clarify that the judgment in fact imposes the penalties individually. But that's why I'm asking because there was language originally, then it wasn't in the amended one. Right. So there's, I think that you're asking for a clarification, really, you're not asking us to remand, you're just asking us to ask the district court for clarification. I think this court itself could clarify because there's not, I guess our, both parties agree that the penalties should not be joint and several. So there's not really anything for the district court to do. And I should emphasize the, like the SEC didn't seek joint and several penalties. I think that actually, the defendants actually included it in their briefing, but it's the, so there's no, there's nothing for the district court to do on that other than to clarify that judgment in fact imposes it individually, which this court could do, or it could affect it through a very limited remand. It sounds like that was my understanding from the briefs, but it sounds like Ms. McElhone's counsel is suggesting that the district court should, I'm not necessarily endorsing this, but should consider whether she should actually have any penalties. What's your response to that? I think the district court certainly already considered whether Ms. McElhone's counsel should have any penalties or separately in the opinion to the extent the court generally spoke about the defendants as a duo and it imposed the same penalty number on them. That's how the case was litigated throughout. It's how the defendants themselves briefed the issue. They didn't ask for a different penalty for each defendant. And as I say, I think they asked for something like $5 million each parentheses jointly. So I think it's hard to say that the district court abused its discretion in imposing the same number for these individuals who were treated as a duo. They controlled the company together. They controlled the scheme together. They're married. And this is how it was presented to the judge. But it definitely, it noted specific things about Mr. LaForte, but it also noted Ms. McElhone's authority as the sole decision-maker, the head decision-maker at the company. So it certainly considered the aspects of both defendants. I'm still struggling over whether or not we have jurisdiction over the appeal of the expansion order. What do you have to say about the argument that the order merges into the final judgment? Well, so our position is that the expansion order does not merge into the final judgment because the receivership proceeding is sort of essentially on a separate track. It doesn't, what is in the receivership doesn't affect the SEC's claims or its remedies. It's really sort of an independent question. Doesn't it affect the ability to have those remedies paid out? Yeah, they're obviously related. It affects what the investors, the harmed investors will ultimately be able to obtain. But I think that, you know, in looking at whether a final distribution order was a collateral order in TORSHA, this court sort of took the position that these things are separate. Like what has happening in the receivership is separate from the merits. And in that sense, it took a different position than the Knights were going to take it in saying that, you know, receivership proceedings are bound up in the merits. Do you agree with the receiver that the defendants could have contested the receivership, the size of the receivership after they received the discovery that they had been seeking? Yes, certainly. I think that the court, the Congress and the court's view of there being front-end and back-end review is that in the middle, there's room for, there's tools at the district court's disposal to address those issues. And it certainly could have made a motion to modify, a motion to release. There were certainly tools available to the defendants. I mean, they, in fact, as you know, they brought the, they did the analysis, they and they filed it as a response, but they didn't make an actual motion for the court to do anything with it. All right. Thank you. Thank you very much. Right on time. Mr. Kaplan, you deserve some time for rebuttal. Yes, I know. Thank you, Your Honor. I'd like to hear first your response to that last point, whether your clients could have moved to In fact, after the discovery was received, my client filed room 41 motion to extensively address a lot of what had occurred and it was denied. And I think simply say that had they changed the label on that motion, it would have made all the difference. It's simply wishful thinking and a false narrative. And I'll take it a step further. Chronology matters. The expansion order was entered in December of 2020. This court previously dismissed an appeal on jurisdictional grounds. After the appeal was taken, after the appeal was briefed in November of 21, only then was the consent judgment entered. In other words, this court was considering an appeal during that time. Right. But then that's the, at least I'm only speaking for myself. The issue for me on that is that there was a pending appeal. And normally when you have a pending appeal and there are consent judgments or stipulations being made on certain issues, the parties reserve their rights to continue that appeal or they preserve their appellate rights on that particular issue. And there is nothing in any of the consent judgments that preserve that right? Yes. And there's nothing in the record of the prior appeal through the oral argument where anyone raised the waiver argument at that time. The consent judgments go to liability only. They don't go to remedies at all. It would be a harsh rule indeed that would find a waiver under these circumstances. Beyond that, the expansion order merges into the final judgment and Schor's against Sklar has been to the court to support that proposition. I wanted to comment on the SEC's assertion that there's plenty of time for this later. There isn't. $2 million a month in interest that's tolling and far from the narrative that was provided with regard to we can work all this out later. I've made, I don't know how many applications to lower court to take the assets and satisfy the judgment and the SEC has fought me tooth and nail, told the court it could not do so and the court accepted their position. If not now, when? All right. I think we have the argument. Thank you, Mr. Kaplan and counsel. We're going to take one more case and then we're going to take a 15 minute recess.